## Nancy Ison, et al. v. Margaret Ison, et al.

(Decided February 18, 1927.)

Appeal from Letcher Circuit Court.

1. Witnesses—Testimony of Payment on Note to One Since Deceased Held Inadmissible (Civil Code of Practice, Section 606).—Under Civil Code of Practice, section 606, testimony as to payment, made to one since deceased and alleged to have not been credited on note, is inadmissible.

2. Vendor and Purchaser—Evidence of Boundaries Held to Support Finding that Purchasers Were Not Entitled to Credit for Portion Alleged to be Held Adversely.—In suit on note and to enforce purchase-money lien, evidence as to boundaries of land conveyed held sufficient to support finding that purchasers were not entitled to credit for portion of land alleged to be held adversely.

R. MONROE FIELDS for appellants.

D. D. FIELDS & DAY for appellees.

Opinion of the Court by Turner, Commissioner—Affirming.

In March, 1920, Alexander Stamper and his wife Margaret sold and conveyed to Nancy Ison and Stephen, her son, a tract of land in Letcher county containing 100 acres, more or less. The recited consideration was $2,500.00, of which $1,300.00 was paid when the conveyance was made, and a note for $1,200.00 executed for the balance.

Prior to the death of Alexander Stamper in January, 1922, there had been paid to him two $200.00 payments on this note, and after his death there was another

payment of $150.00 to the female appellant, none of which are in controversy.

Alexander Stamper left a will in which he devised this note, with other personal property, to his wife, and she in December, 1922, joined by her then husband, Jesse Ison, instituted this action on that note asking for a judgment for the balance and an enforcement of the purchase money lien.

The defendants in their answer and counterclaim asserted the payment of $100.00 during the life of Alexander Stamper which was not credited on the note, and in another paragraph asserted that at the time they bought the tract of land one Cornett was and at all times since, has been and is now, in the actual adverse possession of a portion thereof inclosed by fence and with a house thereon, and that it was agreed at the time of the conveyance between defendants and Alexander Stamper that Stamper should procure the possession of the same from Cornett for these defendants, and that in the event of his failure so to do they should not be required to pay any more of the purchase price than has been paid; that Cornett is still claiming the same adversely and under a claim hostile to Stamper and these defendants, and asserting title, and that neither Stamper nor any of the plaintiffs had ever delivered possession of that portion of the land so adversely held by Cornett to the defendants, and that the value of the same was at least $550.00 and they prayed for an additional credit of $550.00 on the note.

These allegations being placed in issue and evidence taken, a judgment was entered disallowing both of the claimed credits, and the defendants have appealed.

As to the $100.00 credit claimed, appellant Stephen Ison testified that he paid the $100.00 to Alexander Stamper the day after the deed was made; that the agreement had been that he was to pay $1,400.00 down, but at the time the deed was executed he had been able to raise only $1,300.00, but the day thereafter did get and pay the additional $100.00 which was never credited on the note. The plaintiffs' objection to this evidence was sustained, it having been given after the death of Alexander Stamper, and obviously this was correct under the provisions of section 606 of the Civil Code. There being no other evidence of such payment the court properly disallowed it. There was, however, some evidence that $1,-

400.00 instead of $1,300.00 was paid at the time of the conveyance, but there was also evidence that the real consideration was $2,600.00 instead of $2,500.00, which would go to explain, if true, the execution of the note for $1,200.0 even if the $1,400.00 was actually paid at the time.

Under the confused state of the record as to this item we do not feel justified in disturbing the finding of the chancellor.

Panther branch is a small tributary of Line fork, upon the waters of which the lands conveyed are situated. In the conveyance one of the calls is up the middle of Line fork to the mouth of Panther branch, and the next call is "thence a straight (line) to the end of the point that runs down on the upper side of the mouth of said branch." The mouth of Panther branch as it formerly ran is some 20 or 30 feet from where the mouth is and was at the time this conveyance was made, the change in the course having been made by certain excavations made by Cornett for his own purposes. A map on file with the testimony of a surveyor shows that if the quoted call is run from the old mouth of Panther branch it cuts off, for a space of about 10 feet or more, a small area, a foot and a half or two feet wide, within the enclosure of Cornett, while if the line is run from the present mouth of Panther branch it embraces no part of the land in the possession of Cornett.

It is true that certain witnesses testified that from one-fifth to one-half an acre of Cornett's enclosure is embraced within the tract conveyed by Stamper to the Isons, but such evidence is based upon a mere sighting by the witnesses with the naked eye from the mouth of the branch to the point in question, and can not be deemed as accurate or satisfactory as the lines run by the surveyor.

At any rate the evidence as to which mouth of the branch the line should run from and as to the extent of the interference with Cornett's enclosure is so conflicting that we will not interfere with the finding of the chancellor. Even if the call should properly start from the old mouth of Panther branch there would be embraced in the deed such an infinitesimal portion of Cornett's enclosure as to justify the chancellor in ignoring it, and would certainly authorize no material credit upon the purchase money lien.

Each of the questions presented is a question of fact, and there is no such preponderance of the evidence in appellant's favor upon either of them as will justify us in reversing the chancellor's finding.

However, the court entered judgment on the note with interest from March 30, 1921, in the face of the fact that there is a credit on the note showing the payment of all interest up to the 13th of May, 1922. This, however, was only a clerical error which may be, and doubtless will be, corrected in the court below. With this correction made, there is no error in the judgment, and the same is affirmed.